UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RASHAD RENE HESTER                                CIVIL ACTION

VERSUS                                            NO. 17-9295

SANTIAGO REED ET AL.                              SECTION "A" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Rashad Rene Hester, is currently a prisoner in the LaSalle Correctional Center ("LaSalle") in Olla, Louisiana. He was incarcerated in the Lafourche Parish Detention Center ("Lafourche") in Thibodaux, Louisiana at the time of the subject incident. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983. He alleges that defendant Deputy Santiago Reed negligently caused Hester to be electrically shocked and that defendant Nurse Lee provided him with inadequate medical care for the injuries he suffered in the incident while he was incarcerated in Lafourche. Plaintiff seeks monetary damages in the total amount of $150,000. Record Doc. No. 3 (Complaint at ¶ V).

On December 12, 2017, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Assistant Lafourche Parish Attorney Mike Jiminez, counsel for defendants. Plaintiff was sworn and testified for all purposes

1

permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

Having considered the record as a whole and the applicable law, I recommend that this case be DISMISSED WITH PREJUDICE for the following reasons.

## **THE RECORD**

Plaintiff testified that he was incarcerated in LaSalle, serving a nine year sentence for his conviction in October 2017 for a drug distribution charge. Hester stated that he was previously incarcerated at Lafourche from December 6, 2016 to October 2017 and was transferred to LaSalle in November 2017. Hester confirmed that his claims in this case arise from an incident that occurred on January 9, 2017, while he was incarcerated in Lafourche as a pretrial detainee.

Hester testified that on the day of the incident, he and three or four other inmates were in a holding cell, called "the library," with Deputy Reed standing guard in the hallway. Hester stated that he was "nominated" by his dorm-mates to be their barber, so he was in the library to cut the other inmates' hair. Plaintiff stated that Reed gave him a pair of electric clippers. Hester asserted that he plugged one end of the extension cord into the clippers while Reed plugged the other end into the electrical outlet in the hallway outside of the holding cell.

Hester testified that in plugging the cord into the electrical outlet, Reed

negligently "slammed the bars closed," which caused the extension cord to get stuck in the bars. Plaintiff claimed that it was Reed's careless closing of the cell door, while "laughing and clowning with his co-workers," that caused Hester's left hand to be shocked by the clippers. "When he slammed [the extension cord] in [the bars] it caused the shock to come through the clippers from the extension cord wire," plaintiff asserted, "and that sent me falling to the floor." When asked whether it was plaintiff's contention that Reed did this negligently or carelessly, plaintiff responded, "I think it was careless, unprofessional work because he was clowning with another co-worker." He acknowledged that Reed's actions were unintentional.

Hester reiterated that he felt a shock during the incident that knocked him to the floor. Plaintiff asserted that he suffered pain on the day of the incident, and that he continues to have "flashbacks" to that moment and pain in his hand. "Still, to this day, my hand twitches," he claimed. Hester stated that his hand was not burned; the shock did not produce blood or any kind of cut; he did not lose consciousness but was dizzy; there was some blackening or bruising of the hand, which went away; and he experienced numbness in his hand for approximately one hour after the shock. "It didn't leave a wound mark, but if you look in my hand you can tell, you know," plaintiff stated, "that something happened inside my hand."

Hester asserted that he received no medical care. However, he also testified that Reed and another officer took him to see night shift Nurse Lee in the jail 10 to 15 minutes after the incident, and that she examined his hand and checked his heart rate. Hester confirmed that he was given one dose of ibuprofen by the nurse. He stated that he did not attend the follow-up sick call appointment scheduled for January 16, 2017, because he was transferred to another detention center only a few days after the incident. Hester testified that he teleconferenced with a doctor concerning his hand when he returned to the Lafourche jail for a week or two. He asserted that he spoke with the teleconference doctor about the incident, but he claimed that the doctor "blew it off like nothing was wrong with me." Hester testified that at the time of the teleconference he was wearing an Ace bandage on his hand to stop the twitching.

Plaintiff stated that he did not have a copy of his medical records, and he denied knowing Carol McCurdy, who signed the chart notes concerning his medical visit on January 10, 2017. Plaintiff was advised that his medical records contain no evidence of any wounds or swelling on the night of the incident. He confirmed the records' accuracy, but stated that he had a mark on his hand from the clippers and that the inside of his left hand tingled.

Hester confirmed that he asserts two kinds of claims arising from his

4

incarceration at Lafourche, including (1) that Deputy Reed carelessly handled the electrical clippers and cord, which led to the shock, and (2) that he did not receive proper medical care.

The verified medical records from the Lafourche jail state that Hester was brought to the jail medical department shortly after being shocked by the clippers, and that he complained of left arm and wrist pain. Record Doc. No. 8-1 at p. 28. The records indicate that there were no visible wounds or swelling where plaintiff stated the pain was located. Id. Plaintiff was instructed to return to the medical department if his condition persisted or worsened. Id. Rebecca White noted in the record on August 21, 2017 that she contacted the Catahoula Correctional Center ("Catahoula"), where plaintiff was being transferred before being moved to LaSalle, to ask why plaintiff was wearing an Ace bandage. Id. The record states that Catahoula had no information about the Ace wrap, and could not explain why Hester had received the bandage. Id.

At the conclusion of the Spears hearing, my office forwarded a copy of the medical records to Hester and provided him with an opportunity to review them and provide the court with any written comments he might have about them. Record Doc. No. 12.

Hester subsequently wrote that he was shipped to Concordia Parish Correctional

5

Facility, from Lafourche, on January 12, 2017. Record Doc. No. 13 at p. 1. He stated that he filled out a request for medical attention on January 10, 2017 and was scheduled to see a doctor on January 16, 2017. Id. Hester asserted that he was "shipped to a DOC center" while awaiting trial, and he was "shipped" from Concordia to Catahoula, where he stayed from January 12 to April 16, 2017. Id. He wrote that he contacted a nurse upon his arrival at Catahoula, and that he was given an Ace bandage there for cramps to his left forearm and wrist. Id.

## ANALYSIS

I. STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C.§ 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97

(5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusory allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's

testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis

complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's Section 1983 complaint should be dismissed in its entirety under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1) as legally frivolous because it lacks an arguable basis in law. Plaintiff's complaint fails to state a cognizable claim of violation of his constitutional rights, even under the broadest reading.[1]

## II.   MEDICAL CARE

At all relevant times about which he complains, Hester was a pretrial detainee in Lafourche until he was convicted in October 2017. He was transferred to LaSalle in November 2017, after his conviction. In his complaint, plaintiff alleges that defendant Reed's actions led to his electrical shock and that defendant Lee denied him adequate medical treatment for his complaints of being shocked and knocked to the floor. Record Doc. No. 3 (Complaint at ¶ IV). In his testimony, plaintiff asserted that Deputy Reed's negligent handling of the clipper cord caused his hand to be shocked, and that Nurse Lee did not provide sufficient medical care for his injuries. Plaintiff's complaint, as

---

[1] The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

9

amended by his Spears hearing testimony, fails to state a claim for deliberate indifference to his serious medical needs.

Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. Bell v. Wolfish, 441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable

10

relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply. Shepherd v. Dallas Cnty., 591 F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650.

"Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The Farmer definition applies to Eighth Amendment medical claims. Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show that defendants "exhibited deliberate indifference to his serious medical needs." Cooper v. Johnson, 353 F. App'x 965, 967 (5th Cir. 2009) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate

health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur Cty., 245 F.3d 447, 458-59 (5th Cir. 2001)). In the Section 1983 medical care context, a showing of deliberate indifference to serious medical needs "requires the inmate to allege that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evidence a wanton disregard for any serious medical needs.'" Brewster v. Dretke, 587 F.3d 764, 770 (5th Cir. 2009) (quoting Domino v. Tex. Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has reaffirmed that "deliberate indifference"
> 
> is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Tex. Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997)) (other quotations omitted) (emphasis added); accord Tamez, 589 F.3d at 770. "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton v.


Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in Hare are at issue. See Tamez, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'"). Therefore, the "deliberate indifference" standard applies and Hester must allege facts sufficient to establish that defendants Reed and Lee knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, plaintiff wholly fails to allege facts sufficient to satisfy any of the essential elements of his claim, including especially the stringent "deliberate indifference" standard.

As the Lafourche medical records and plaintiff's testimony establish, plaintiff did not suffer "a life-long handicap or permanent loss" of the type required to constitute a serious medical need for constitutional purposes. See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth Cnty. v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); see also Raspberry v. Johnson, 281 F.3d 1279, 2001 WL 1692494, at *1 (5th Cir. 2001) (citing Domino v. Tex. Dep't of Crim. Justice, 239 F.3d 752, 754 (5th

14

Cir. 2001)) (plaintiff with injured hand and bruises failed to allege deliberate indifference to serious medical needs when he was examined by medical personnel and injuries healed); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) ("swollen wrists with some bleeding" from handcuffs not a serious medical need); Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged inadequate treatment for broken hand failed to state constitutional violation, when he was examined by physician and received x-rays and medication); Roseberry v. Prisoner Transp. Servs., No. 4:15-CV-P126-JHM, 2016 WL 324549, at *4 (W.D. Ky. Jan. 26, 2016) (swelling and bruising "simply do not rise to the level of an objectively serious medical need").

Even assuming, without concluding, that the electrical shock to Hester's hand presented a serious medical need for constitutional purposes, plaintiff has alleged facts, confirmed by his testimony and the medical records, that negate any inference of deliberate indifference by jail officials. His complaint, as amended by his testimony and his statement of facts and confirmed by the medical records, shows that he received constitutionally adequate medical care while incarcerated in Lafourche.

Hester testified, and his medical records confirm, that he was seen by a nurse on the night of the incident and by a doctor during a follow-up teleconference. He also

stated that his conditions were treated with physical examinations and medication. Plaintiff's testimony and medical records confirm that his condition was addressed by medical personnel during his stay in Lafourche, and that those professionals exercised their medical judgment regarding his need, or lack of need, for treatment.

Plaintiff alleges that he received <u>no</u> treatment for his complaint of electric shock, but his medical records <u>and</u> his further testimony reflect that he was seen by Nurse Lee and a doctor via video teleconference. These medical consultations are <u>not</u> "no treatment" and do not support a claim of deliberate indifference. See <u>Lathers v. Nelson Coleman Corr. Ctr.</u>, No. 10-128-D1, 2010 WL 1489903, at * 10 (E.D. La. Mar. 22, 2010), <u>report & recommendation adopted</u>, 2010 WL 1485468 (E.D. La. Apr. 13, 2010) (Inmate "was not denied treatment; on the contrary, x-rays were taken and no injury was found. . . . [The C]onstitution does not require that a prisoner be sent to a hospital for additional care or treatment when medical tests indicate that no such additional treatment is necessary.").

Although Hester has expressed dissatisfaction with the overall quality and effectiveness of treatment, none of his allegations rise to the level of deliberate indifference to serious medical needs necessary to establish a constitutional violation cognizable under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example of a matter for <u>medical judgment</u>. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any medical needs. Deliberate indifference is an extremely high standard to meet.

<u>Gobert</u>, 463 F.3d at 346 (footnotes, citations and internal quotations omitted) (emphasis added). No such showing has been made on the current record. In Hester's case, the decisions of the jail nurse not to provide him with additional testing or treatment for an alleged condition that she found required no further examination or care was a classic example of the exercise of "medical judgment," which, even if incorrect, cannot serve as the basis for a finding of deliberate indifference in the constitutional sense.

Contentions like Hester's that amount to mere disagreement with the quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." <u>Stewart v. Murphy</u>, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does <u>not</u> constitute deliberate indifference, even if treatment was negligently administered); <u>see also</u> <u>Estelle</u>, 429 U.S. at 107 (The "question whether an X-ray or additional diagnostic techniques or

17

forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. <u>At most it is medical malpractice</u> . . . .") (emphasis added); <u>Rowe v. Norris</u>, 198 F. App'x 579, 581 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); <u>Mendoza</u>, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); <u>Wesson</u>, 910 F.2d at 284 (allegations establishing provision of medical treatment are inconsistent with inference of deliberate indifference).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs. His complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

## RECOMMENDATION

For all the forgoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions,

and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this ___11th___ day of January, 2018.

                                              JOSEPH C. WILKINSON, JR.
                                       UNITED STATES MAGISTRATE JUDGE

---

[2] Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.